(No. 1888—

THE ALTON RAILROAD COMPANY, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed January 8, 1935.*

WILLIAM L. PATTON, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

This claim is submitted under a stipulation of facts for Sixty-three Dollars ($63.00) freight charges on a carload of brick consigned to the Illinois State Reformatory at Pontiac by Alsey Brick & Tile Company. The brick were purchased from the F. W. Lucke Brick Co., but the latter procured them from Alsey Brick & Tile Company, and the latter shipped

them from Alsey, Illinois under a straight B/L to the Illinois State Reformatory as consignee. The carrier did not until long after the brick were delivered, have any knowledge that the contract originated through the Lucke Brick Company. The brick were delivered to the State without collection in advance of the charges, and the provisions of the B/L that "No Carrier by Railroad shall deliver or relinquish possession at destination of the property covered by this B/L until all tariff rates and charges thereon have been paid", were suspended as to the State Institution. When the railroad finally presented its B/L for payment the payment was declined by the Institution for the reason that the original order placed with the F. W. Lucke Brick Company provided that the brick were to be delivered by them F. O. B. Pontiac. Settlement for the price of the brick was made by respondent with the Lucke Brick Company without deducting the cost of the freight. The State did not know that the freight was not paid and the claimant did not know that the State contract provided for F. O. B. Pontiac delivery.

In a report dated March 30, 1932 by Superintendent of Prisons, F. D. Whipp, the latter states:

"It appears that the Illinois State Reformatory did not protect the railroad by deducting this bill from the bill of F. W. Lucke Brick Company, and from the information we have received, this bill is non-collectible from said company. We believe it is just that this claim be allowed by the Court of Claims."

The authorities seem to indicate a legal liability upon the part of the State, as consignee, regardless of the liability of Lucke & Company under its contract.

"The consignee becomes liable in case he accepts the goods, knowing that the carrier looks to him for payment and waives its lien by delivery of the goods."

## 10 C. J. 445 Sec. 700.

"In interstate shipments the general rule is that if a consignee accepts a shipment he becomes liable as a matter of law for the full amount of the freight charges."

### L. & N. vs. U. S., 267 U. S. 396.

The B/L provided that the Carrier should not make delivery without requiring payment of freight charges and it was stipulated in the B/L by signature of the consignor that

the Carrier should not make delivery without requiring payment of such charges. There was in full force and effect at that time an order of the Interstate Commerce Commission made pursuant to Par. 3 of Sec. 2 of the Interstate Commerce Act as amended by the Transportation Act of 1920 under Sec. 10 of which it was provided as follows:

"The foregoing rules apply to all shippers and consignees except * * * any state or territory or political subdivision thereof."

The State in accepting delivery under this waiver knew or should have known that the consignor was released from liability for the charges. We believe the State is legally liable for the freight and an award is therefore made in the favor of claimant in the sum of $63.00.